# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JPW INDUSTRIES, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 3:16-cv03153 |
| OLYMPIA TOOLS INTERNATIONAL, INC. | ) |
| Defendant. | ) |

## ORDER FOLLOWING CLAIM CONSTRUCTION HEARING

The cause is before the Court on the parties' request for claim construction pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), filed May 25, 2017. (ECF No. 30.) The Court has considered the parties' claim construction briefs and arguments made at the claim construction hearing on September 6, 2017. The Court's determinations regarding claim term interpretation are set out below.

## I. BACKGROUND
### A. Factual History

The action arises out of allegations by Plaintiff JPW Industries ("JPW") against Defendant Olympia Tools International ("OTI") of infringement of United States Patent 9,079,464 ("the '464 patent"). Plaintiff JPW is a Washington corporation with a principal place of business in Tennessee. (Compl., ECF No. 1 ¶ 5.) Defendant OTI is a California corporation with a principal place of business in California. (Id. ¶ 6.)

This action involves alleged infringement of the following patent on a portable vise, invented by Timothy Onello and Charles Weber and assigned to JPW:

| U.S. Patent Number | Issued | Patent |
|---|---|---|
| 9,079,464 | July 14, 2015 | Portable Work Holding Device and Assembly |

(Id. ¶¶ 11-12; U.S. Patent 9,079,464, ECF No. 1-1.) JPW alleges that OTI's OLYMPIA HITCH VISE (Model No. 38-652) infringes on one of more the inventions recited in the '464 Patent. (Compl. ¶¶ 13-15). JPW asserts that at least claims 1, 3, 5-8, 12, and 21-25 are infringed. (Id. at ¶ 15.) JPW sells a competing portable vise, ATV: ALL TERRAIN VISE, and has entered two copies of the device into evidence as Exhibits 1 and 2.

### B. Procedural History

Plaintiff filed the Complaint on December 6, 2016, in the Middle District of Tennessee. (ECF No. 1.) On February 24, 2017, Defendant filed an Answer to the Complaint, denying infringement and raising affirmative defenses including invalidity and prosecution history estoppel. (Def.'s Ans., ECF No. 20.) On March 9, 2017, the parties held an initial case management conference before Magistrate Judge Barbra Holmes, (ECF No. 23), and on March 16, 2017, Magistrate Judge Holmes entered an Initial Case Management Order. (ECF No. 24.)

On May 25, 2017, the parties entered a Joint Claim Construction Statement (ECF No. 30), identifying eight claims whose terms the parties disputed. On June 9, 2017, both parties filed Opening Claim Construction Briefs. (ECF Nos. 35-36.)

On June 1, 2017, Defendant filed a Motion for Judgment on the Pleadings for Dismissal Based on Improper Venue. (ECF No. 31.) On June 29, Plaintiff filed a response to the motion. (ECF No. 44.) On July 11, 2017, Defendant filed a reply. (ECF No. 50.) On

July 19, 2017, the Court ordered supplemental briefs on whether Defendant has "a regular and established place of business" in this District. On August 8, 2017, Defendant filed its supplemental response. (ECF No. 63.) On August 24, 2017, Plaintiff filed its reply to Defendant's supplemental response. (ECF No. 77.) Defendant's motion to dismiss remains pending before the Court.

On June 22, 2017, the Court held a Telephonic Scheduling Conference with the parties. (Min. Entry., ECF No. 34.) On August 11, 2017, the Court held a Patent Scheduling Conference in Nashville, Tennessee. (ECF No. 71.) On August 25, 2017, the parties jointly proposed a scheduling order, and on August 31, 2017, the Court entered a scheduling order reflecting the proposal. (ECF No. 81).

On September 6, 2017, the Court held a Claim Construction Hearing in Nashville, Tennessee. At the hearing, the Court heard arguments from both parties regarding interpretation of the terms listed in the Joint Claim Construction Statement. (ECF No. 30.)

## II. LEGAL STANDARDS

"In conducting an infringement analysis, a court must first determine the meaning of any disputed claim terms and then compare the accused device to the claims as construed." Proveris Sci. Corp. v. Innovasystems, Inc., 739 F.3d 1367, 1371 72 (Fed. Cir. 2014) (citing Wavetronix LLC v. EIS Elec. Integrated Sys., 573 F.3d 1343, 1354 (Fed. Cir. 2009)); accord Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc). Regarding the first step, claim construction is a question of law with "evidentiary underpinnings" to be determined by the court. Teva Pharm. USA, Inc. v. Sandoz, Inc., 135 S. Ct. 831, 835, 838 (2015); Markman v. Westview Instruments, Inc., 517 U.S. 370, 390 (1996)). Where terms or phrases are "not commonly understood," a court may make subsidiary findings of fact based

on evidence extrinsic to the patent to assist the court in its task of claim interpretation. See Teva Pharm., 135 S. Ct. at 837–38. These factual determinations precede the court's ultimate legal construction of the patent's claims. Id.

**A. Claims**

Claim construction begins with the language of the claims themselves. Braintree Labs., Inc. v. Novel Labs., Inc., 749 F.3d 1349, 1354–55 (Fed. Cir. 2014) (citing Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001)). Claim terms in the patent "are generally given their ordinary and customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Ethicon Endo-Surgery, Inc. v. Covidien, Inc., 796 F.3d 1312, 1323 (Fed. Cir. 2015) (citing Phillips v. AWH Corp., 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) (en banc)). This general rule has two known exceptions: (1) "when a patentee sets out a definition and acts as his own lexicographer," or (2) "when the patentee disavows the full scope of the claim term either in the specification or during prosecution." Hill-Rom Servs., Inc. v. Stryker Corp., 755 F.3d 1367, 1371 (Fed. Cir. 2014) (quoting Thorner v. Sony Comput. Entm't Am. LLC, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). Where a claim term has more than one "ordinary" meaning, or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute, a determination that a claim term "needs no construction" or has the "plain and ordinary meaning" may be inadequate. O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351, 1361 (Fed. Cir. 2008).

"To determine the scope and meaning of a claim, we examine the claim language, written description, prosecution history, and any relevant extrinsic evidence." InTouch Techs., Inc. v. VGO Commc'ns, Inc., 751 F.3d 1327, 1339 (Fed. Cir. 2014) (citing Phillips, 415 F.3d at 1315–19); Markman, 52 F.3d at 978-79.

> Apart from the claim language itself, the specification is the single best guide to the meaning of a claim term. And while the prosecution history often lacks the clarity of the specification, it is another established source of intrinsic evidence. After considering these three sources of intrinsic evidence, a court may also seek guidance from extrinsic evidence. However, extrinsic evidence may be less reliable than the intrinsic evidence.

Vederi, LLC v. Google, Inc., 744 F.3d 1376, 1382 (Fed. Cir. 2014) (citations and internal quotation marks omitted).

### B. Intrinsic Evidence
#### 1. Specification

"The specification is fundamental to claim construction, as it is the single best guide to the meaning of a disputed term." Trading Techs. Int'l, Inc. v. Open E Cry, LLC, 728 F.3d 1309, 1319 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1315). In determining the meaning to be given to claim terms, a court must read the terms in the context of the specification as it is the patent specification which, by statute, must contain a "full, clear, concise, and exact" description of the invention. 35 U.S.C. § 112(a); accord Phillips, 415 F.3d at 1311. Consequently, "claim terms must be construed in light of the specification and prosecution history, and cannot be considered in isolation." GE Lighting Sols., 750 F.3d at 1308-09 (citing Phillips, 415 F.3d at 1313).

Although claim terms are normally given their ordinary and customary meaning, a patentee may depart from this rule by acting as his own lexicographer or by disavowing the claim scope in the specification. Phillips, 415 F.3d at 1316. "Idiosyncratic language, highly technical terms, or terms coined by the inventor are best understood by reference to the specification." 3M Innovative Props. Co. v. Tredegar Corp., 725 F.3d 1315, 1321 (Fed. Cir. 2013) (citing Phillips, 415 F.3d at 1315–16). To use a special definition of a claim term, the patentee must "clearly" redefine the term and have an "express intent" to do so within the patent. Thorner, 669 F.3d at 1365–66; Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc., 214 F.3d 1302, 1307 (Fed. Cir. 2000).

Courts must "not read limitations from the embodiments in the specification into the claims." Hill-Rom, 755 F.3d at 1371 (citing Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 904 (Fed. Cir. 2004)). This requirement prevents a court from limiting the scope of the claims to only the preferred embodiment or specific examples disclosed in the specification. Epos Techs. Ltd. v. Pegasus Techs. Ltd., 766 F.3d 1338, 1341 (Fed. Cir. 2014) ("[I]t is improper to read limitations from a preferred embodiment described in the specification— even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." (quoting Liebel-Flarsheim, 358 F.3d at 913)). "If the intrinsic record supports several definitions of a term, the term may be construed to encompass all such consistent meanings . . . . Therefore, absent a clear disavowal or alternative lexicography by a patentee, he or she 'is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning.'" Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc., No. 2015-2078, 2017 WL 1228579, at *7 (Fed. Cir. Apr. 4, 2017) (internal citations omitted). "By the same token, the claims cannot 'enlarge what is patented beyond what the inventor has described in the invention.'" Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009) (quoting Biogen, Inc. v. Berlex Labs., Inc., 318 F.3d 1132, 1140 (Fed. Cir. 2003)).

### 2. Prosecution History

"A court should also consider the patent's prosecution history, if it is in evidence. The prosecution history consists of the complete record of the proceedings before the [U.S. Patent and Trademark Office]." InTouch Techs., 751 F.3d at 1341 (citations and internal quotation marks omitted). "[P]rosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Plantronics, Inc. v. Aliph, Inc., 724 F.3d 1343, 1350 (Fed. Cir. 2013)

(alteration in original) (quoting Phillips, 415 F.3d at 1317). A court "does not rely on the prosecution history to construe the meaning of the claim to be narrower than it would otherwise be unless a patentee limited or surrendered claim scope through a clear and unmistakable disavowal." 3M, 725 F.3d at 1322 (citing Trading Techs. Int'l, Inc. v. eSpeed, Inc., 595 F.3d 1340, 1352 (Fed. Cir. 2010)).

### C. Extrinsic Evidence

"Although it is less significant than intrinsic evidence, a court can consider extrinsic evidence in the record, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech., 709 F.3d 1348, 1355 (Fed. Cir. 2013) (quoting Phillips, 415 F.3d at 1317). Although such evidence is generally considered less reliable than the intrinsic record, a court is free to consider it and may do so at any stage of its inquiry. Phillips, 415 F.3d at 1317-19. A court may rely on extrinsic evidence so long as the evidence does not contradict the intrinsic record. Advanced Fiber Techs. (AFT) Trust v. J & L Fiber Servs., Inc., 674 F.3d 1365, 1374–75 (Fed. Cir. 2012) (citing Phillips, 415 F.3d at 1319).

## III. ANALYSIS
### A. The Disputed Claims

The parties agree as to the meaning of "back" in claim 21. (ECF No. 30 at PageID 86.) They dispute terms in seven claims of the '464 patent; those claims are listed below, with the disputed language underlined.

#### 1. Claim 1

A work holding device, comprising:
 a first jaw piece having an elongated first connection member for connecting the work holding device to a support, the first connection member defining a first passage, the first connection member being configured as a generally square elongated tube shaped for

mounting in a receiver hitch of a vehicle, the first connection member having a first end at the first jaw piece and a second end;
a second jaw piece having an elongated second connection member positionable within the first passage and defining a second passage in communication with the first passage, the second connection member having a first end at the second jaw piece and a second end opposite the first end, <u>the second passage being in communication with the first passage at the second end of the second connection member</u>; and
a spindle assembly movably connecting the second jaw piece to the first jaw piece, the spindle assembly configured to move the second jaw piece with respect to the first jaw piece to create a clamping pressure when an object is placed between the first jaw piece and the second jaw piece, the second end of the second connection member being enclosed within the first connection member regardless of the position of the second jaw relative to the first jaw.

## 2. Claim 3

The work holding device of claim 1, further comprising:
<u>a recess defined within the first jaw piece forming a handle</u>.

## 3. Claim 8

A portable work holding device, comprising:
a stationary first jaw piece having a casting and an elongated first connection member extending from the casting, the first connection member defining a first passage, the elongated first connection member being shaped to fit into and be supported in a receiver hitch of a vehicle;
a movable second jaw piece having an elongated second connection member extending from the second jaw piece, the second connection member positionable within the first passage to couple the second jaw piece to the first jaw piece, <u>the second connection member defining a second passage in communication with the first passage with the second connection member positioned within the first passage</u>; and
a spindle assembly movably connecting the second jaw piece to the first jaw piece, the spindle assembly comprising:
a spindle nut positioned within at least the first passage, the spindle nut forming a helical thread on an inner surface of the spindle nut along at least a portion of a length of the spindle nut between a first end and a second end of the spindle nut; and
a spindle forming a helical thread on an outer surface of the spindle along at least a portion of a length of the spindle cooperating with the helical thread formed on the inner surface of the spindle nut to facilitate translation of the second jaw piece with respect to the first jaw piece along an axis defined by the spindle.

## 4. Claim 12

The portable work holding device of claim 8, further comprising
<u>a handle coupled to the spindle and configured to be fixed in a locked position</u>.

## 5. Claim 21

The portable work holding device of claim 8, wherein

the first jaw piece defines a cored-out back section to reduce weight and provide a handle to facilitate moving the work holding device, the cored-out back section being centered on the first jaw piece.

### 6. Claim 23

A portable work holding device assembly, comprising:

    a work holding device, comprising:
        a first jaw piece having an elongated connection member for connecting the work holding device to a support, the elongated connection member including a generally square elongated tube that is shaped and configured to fit into a receiver hitch of a vehicle;
        a second jaw piece; and
        a spindle assembly movably connecting the second jaw piece to the first jaw piece, the spindle assembly comprising a threaded spindle rotatable to move the second jaw piece with respect to the first jaw piece; and

    a plate assembly comprising:
        a member including a plurality of walls defining a passage having a complementary cross-section to receive the elongated connection member; and
        one or more brackets coupled to a corresponding wall of the plurality of walls of the member, the one or more bracket each defining one or more apertures to facilitate coupling the work holding device to a support surface.

### 7. Claim 24

A method of assembling a work holding device, said method comprising:
    providing a stationary first jaw piece having a casting and an elongated first connection member extending from the casting, the first connection member defining a first passage;
    positioning an elongated second connection member of a movable second jaw piece within the first passage, the elongated second connection member having a first end at the second jaw piece and a second end opposite the first end, the second connection member defining a second passage, the second passage being in communication with the first passage at the second end of the second connection member; and
    positioning a spindle assembly within the first passage and the second passage, the spindle assembly movably coupling the second jaw piece to the first jaw piece.

### B. The Disputed Terms:
#### 1. "a second passage in communication with the first passage"

| Claim term | Claim | JPW's Proposed Construction | OTI's Proposed Construction |
|---|---|---|---|
| "the second passage being in communication with the first passage at the second end of the second connection member" | 1 | "a second passage open to the first passage"<br><br>JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | The second end of the second connection member terminates inside the first connection member, and is generally open to the inside of the first connection member. |
| "the second connection member defining a second passage in communication with the first passage with the second connection member positioned within the first passage" | 8 | "a second passage open to the first passage"<br><br>JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | "The second end of the second connection member terminates inside the first connection member, and is generally open to the inside of the first connection member." |
| "the second passage being in communication with the first passage at the second end of the second connection member" | 24 | "a second passage open to the first passage"<br><br>JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | "The second end of the second connection member terminates inside the first connection member, and is generally open to the inside of the first connection member." |

OTI argues that the Court should read additional words into the claim term in accordance with the '464 Patent's prosecution history. (Def.'s Opening Claim Construction Br., ECF No. 35 at PageIDs 115-16.) OTI also contents that intrinsic evidence in the specification and prosecution history supports their construction. (Id. at PageIDs 116-120.)

JPW argues that the term's plain meaning is supported by the specification, prosecution history, and dictionary definitions. (JPW's Opening Claim Construction Brief, ECF No. 36 at PageIDs 261-65.) JPW also argues that OTI's proposed construction violates several tenets of claim construction: reading limitations out of claims, ignoring prosecution

history, eliminating differences in claim language, and interpreting claims with ambiguous terms. (Id. at PageIDs 265-68.)

After reviewing the arguments and record, the Court has determined that the term "in communication with" means "open to," and that the remaining claim terms hold their plain and ordinary meanings. First, OTI's proposed construction limits claims 1, 8, and 24 to configurations where the second connection member "terminates inside the first connection member." This reading, however, ignores the applicant's use of different terms in claim 8 from claims 1 and 24. The Court must give effect to all claim terms when possible. Merck & Co., Inc., v. Teva Pharm. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2002). Adopting OTI's proposal would read out the limitation "positioned within the first passage" in claim 8. Accordingly, OTI's proposal is an incorrect interpretation of the term based on the language of the claims themselves.

Further, OTI seeks to interpret the term "in communication with" to mean "generally open to the inside of." The term "in communication with" is ambiguous. The specification uses the same definition to describe the components' spatial relationship. (E.g., '464 Patent, col. 3, lines 37-46.) The drawings do not otherwise limit, interpret, or otherwise shed light on the claim term's meaning. (See '464 Patent, Figures 1-2, 5. Turning to the prosecution history, the applicants argued that the cited prior art failed to teach the term "open to" because it failed to teach a configuration wherein the second passage was "open to" the first passage. ('464 Patent Amendment A, ECF No. 35-6 at PageIDs 219-220.) This reflects that the applicants understood the term "in communication with" to mean "open to." OTI's reading of the prosecution history unnecessarily assigns additional words to applicants' own definition. For that reason, OTI's reading is incorrect. JPW's construction, conversely, does not read in

additional terms and reflects the applicants' own definition of the claims during prosecution. In accordance with the intrinsic evidence, the Court adopts JPW's construction.

### 2. "a recess defined within the first jaw piece forming a handle"

| Claim term | Claim | JPW's Proposed Construction | OTI's Proposed Construction |
|---|---|---|---|
| "a recess defined within the first jaw piece forming a handle" | 3 | Plain and ordinary meaning. *E.g.*, "an opening within the first jaw piece for safe holding." | The "forming a handle" language is non-limiting intended use/result. |

OTI argues that the term "handle" is not a structural limitation, but instead recites an intended use of the device. (ECF No. 35 at PageIDs 120-23.) OTI's argument relies on USPTO interpretations of apparatus terms, as well as the '464 Patent's prosecution history, because the applicants did not dispute that the prior art's non-handle "recess" met the claim term. (Id.)

JPW argues that the claim term should be interpreted according to its plain and ordinary meaning, including that "handle" is a structural limitation rather than intended use language. (ECF No. 36, PageIDs 268-70.) JPW further argues that "handle" limits the scope of the claims because the term "'recites essential structure' and provides a fundamental characteristic of the claim" related to the device's portability. (Id.) JPW also argues that the term "handle" differentiates the specific recess used to carry the device from other recesses that could not be used as handles, and that the distinction is a "fundamental structural characteristic" of the recess recited in claim 3. (Id.)

The Court has determined that "handle" reflects intended use, not a structural limitation. Considering first the claim language itself, the term "handle" in claim 3 could either recite an additional structural feature or describe an intended use of other structural features. Turning next to the specification and drawings, the disclosure does not use the term

"handle" in reference to a particular structure or component of the device. Moreover, the specification describes a "cored-out back section" (104 in the specification and drawings) that "provides a handle feature." ('464 Patent, col. 5, lines 37-38.) Neither the specification nor the drawings reveal which component(s) form that handle. Looking to the illustrative embodiments in Figures 2 and 5, the cored-out back section 104 is bordered by several walls, any one of which could be gripped as a handle. The disclosure does not, however, specify which of the several walls, if any, is the "handle." Accordingly, JPW's proposed interpretation might raise enablement or written description issues under 35 U.S.C. § 112. Interpreting the claim term according to OTI's proposal avoids those possible issues. For the foregoing reasons, the Court finds the term "forming a handle" to be non-limiting intended use language, and adopts OTI's proposed interpretation of the claim term.

### 3. "a handle coupled to the spindle and configured to be fixed in a locked position"

| Claim term | Claim | JPW's Proposed Construction | OTI's Proposed Construction |
|---|---|---|---|
| "a handle coupled to the spindle and configured to be fixed in a locked position" | 12 | Plain and ordinary meaning. *E.g.*, "a handle connected to the spindle that is able to be fixed in a locked position." | The handle is always rotationally fixed relative to the spindle, and can be moved to a locked position where the spindle cannot be rotated to move the jaws relative to one another. In the alternative, this term cannot be construed and is indefinite because one of ordinary skill in the art cannot determine what is regarded as the invention, or because there is no written support. |

OTI argues that the Court should read the claim term commensurate with the embodiment illustrated in the drawings, on the ground that no other configurations are supported. (ECF No. 35 at PageIDs 123-26.)

JPW argues that the Court should adopt the claim term's plain and ordinary meaning. (ECF No. 36 at PageIDs 270-72.) With respect to the handle's attachment to the spindle, JPW argues that OTI's proposed construction would impermissibly limit the scope of the claim to an illustrated embodiment. (Id. at PageID 271) With respect to the handle's locking configuration, JPW argues that OTI's proposed construction contradicts the disclosure. (Id. at PageIDs 271-72.)

The Court has determined that claim 12 should be interpreted to mean "a handle fixedly mounted to the spindle and able to be fixed in a locked rotational position." With respect to the handle's attachment to the spindle, the word "coupled" as used in claim 12 is ambiguous. As OTI's brief notes, "coupled" could mean either fixedly attached or slideable relative to the spindle, as in tabletop vises. (ECF No. 35 at PageID 124.) Turning to the disclosure, its description of the handle (numeral 80) and its configuration references Figures 1-4. ('464 Patent, col. 4, lines 48-50.) The specification provides: "handle 80 includes a socket head 82 seated on one or more socket head cap screws 84 mounted to second jaw piece 30," (id., col. 4, lines 64-66), and that handle 80 is set "at a fixed terminal point 100 in the locked position". (Id., col. 5, lines 33-34.) Figures 1-3 show the handle 80 fixedly mounted to the second jaw piece 30, with the secured end of handle 80 being mounted in socket head 82, adjoining second end 60 of spindle 52, such that the unsecured end of handle 80 forms fixed terminal point 100. (col. 5, lines 29-31). The '464 Patent disclosure thus establishes that Onello and Weber conceived and disclosed of a device where the handle was fixedly mounted to the spindle. The disclosure does not, however, establish conception or possession of other handle/spindle attachment configurations. It is not clear that the inventors conceived of an invention as recited in claim 12 where "coupled" meant anything other than "fixedly mounted" at the time the application was filed. As a result, interpreting the term with broader

scope would invite enablement or written description issues under 35 U.S.C. § 112. The Court must avoid reading the disclosure into the claims; in the instant case, however, the disclosure sheds light on the meaning of "coupled" in the claim term, and "coupled" in the context of the claim means "fixedly mounted." Accordingly, the Court interprets "coupled" to mean "fixedly mounted."

With respect to the handle's configuration, the term "configured to be fixed in a locked position" is readily understood according to those words' plain meanings. The term does not, however, specify a direction, axis, or plane along which the handle's movement is fixed. Turning to the specification, the '464 Patent describes the handle (80) as being rotatable and lockable "about axis 62," which is the lengthwise axis of the device. '464 Patent, col. 4, lines 58-64. Accordingly, claim 12 is correctly read to recite a handle "able to be fixed in a locked rotational position."

**4. "the first jaw piece defines a cored-out back section to reduce weight and provide a handle to facilitate moving the work holding device, the cored-out back section being centered on the first jaw piece"**

| Claim term | Claim | JPW's Proposed Construction | OTI's Proposed Construction |
|---|---|---|---|
| "a first jaw piece defines a cored-out back section to reduce weight and provide a handle to facilitate moving the work holding device, the cored-out section being centered on the first jaw piece" | 21 | *See* "back."<br><br>JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | The "to reduce weight and provide a handle to facilitate moving the work holding device" language is nonlimiting intended use/result. |

OTI applies the same arguments to claim 21 as they do to claim 3. With respect to claim 21, OTI further argues that the term "reduce weight" cannot be given its plain and ordinary meaning because it is "hopelessly vague." (ECF No. 35 at PageIDs 120-23.)

JPW argues that the words should be given their plain and ordinary meaning because they recite additional structure, and that OTI's arguments ignore the intrinsic evidence. (ECF No. 36 at PageIDs 272-74.)

The Court has determined that the term means "a first jaw piece defines a cored-out back section to reduce weight, the cored-out section being centered on the first jaw piece," with the additional terms reflecting intended use. The term "provide a handle to facilitate moving the work holding device" in claim 21 is non-limiting for the same reason that the Court found the term "handle" in claim 3 to be non-limiting: the term itself is ambiguous and the specification does not resolve the ambiguity. The phrase "to reduce weight" is, however, a structural limitation. Although the phrase does not recite additional structural components, it limits the physical features of the device: the device must have reduced weight compared to a device without the cored-out back section. For that reason, "to reduce weight" is a structural limitation.

### 5. "a member having a plurality of walls defining a passage having a complementary cross-section to receive the elongated connection member"

| Claim term | Claim | JPW's Proposed Construction | OTI's Proposed Construction |
|---|---|---|---|
| "a member having a plurality of walls defining a passage having a complementary cross-section to receive the elongated connection member" | 23 | Plain and ordinary meaning. | The complementary cross-section is a generally square, closed shape. |

OTI argues that the term should be interpreted according to the embodiment illustrated in Figure 9 of the disclosure. (ECF No. 35 at PageIDs 126-27.)

Page 16

JPW argues that the terms should be given their plain and ordinary meaning, and that OTI's proposal unreasonably imports limitations from the specification's illustrative embodiment. (ECF No. 36 at PageIDs 274-75.)

The Court has determined that the term should be interpreted according to its plain and ordinary meaning. The claim language is not ambiguous, so it is unnnecessary to go beyond the language itself to ascertain its meaning. Even if the claim language were ambiguous, in the instant case the specification supports JPW's proposal because it uses the generic language of the claims rather than the specific language OTI proposes. ('464 Patent, col. 5, line 63-col. 6, line 9.) In the instant case, there is no reason to read the limitations of an illustrative embodiment into the claims. SciMedLife Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1340 (Fed. Cir. 2001) (referring to unnecessary reading of specification limitations into the claim terms as "one of the cardinal sins of patent law").

**IT IS SO ORDERED**, this 5th day of October, 2017.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT COURT JUDGE

## Summary of Claim Terms and Constructions

| Claim Term | Claim | JPW's Proposed Construction | OTI's Proposed Construction | Court's Construction |
|---|---|---|---|---|
| "the second passage being in communication with the first passage at the second end of the second connection member" | 1 | "a second passage open to the first passage" JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | The second end of the second connection member terminates inside the first connection member, and is generally open to the inside of the first connection member. | "the second passage open to the first passage at the second end of the second connection member." |
| "a recess defined within the first jaw piece forming a handle" | 3 | Plain and ordinary meaning. *E.g.*, "an opening within the first jaw piece for safe holding." | The "forming a handle" language is non-limiting intended use/result. | The term "forming a handle" is non-limiting intended use. |
| "the second connection member defining a second passage in communication with the first passage with the second connection member positioned within the first passage" | 8 | "a second passage open to the first passage" JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | "The second end of the second connection member terminates inside the first connection member, and is generally open to the inside of the first connection member." | "the second connection member defining a second passage open to the first passage with the second connection member positioned within the first passage." |
| "a handle coupled to the spindle and configured to be fixed in a locked position" | 12 | Plain and ordinary meaning. *E.g.*, "a handle connected to the spindle that is able to be fixed in a locked position." | The handle is always rotationally fixed relative to the spindle, and can be moved to a locked position where the spindle cannot be rotated to move the jaws relative to one another. In the alternative, this term cannot be construed and is indefinite because one of ordinary | "a handle fixedly mounted to the spindle and able to be fixed in a locked rotational position." |

| | | | | |
|---|---|---|---|---|
| | | | skill in the art cannot determine what is regarded as the invention, or because there is no written support. | |
| "a first jaw piece defines a cored-out back section to reduce weight and provide a handle to facilitate moving the work holding device, the cored-out section being centered on the first jaw piece" | 21 | *See* "back." JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | The "to reduce weight and provide a handle to facilitate moving the work holding device" language is nonlimiting intended use/result. | "a first jaw piece defines a cored-out back section to reduce weight, the cored-out section being centered on the first jaw piece." |
| "a member having a plurality of walls defining a passage having a complementary cross-section to receive the elongated connection member" | 23 | Plain and ordinary meaning. | The complementary cross-section is a generally square, closed shape. | Plain and ordinary meaning. |
| "the second passage being in communication with the first passage at the second end of the second connection member" | 24 | "a second passage open to the first passage" JPW contends that the remaining portions of the claim term do not require construction and should be interpreted according to their plain and ordinary meaning. | "The second end of the second connection member terminates inside the first connection member, and is generally open to the inside of the first connection member." | "the second passage open to the first passage at the second end of the second connection member." |